UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

NEIL R. BARLOW  :
 :
    v.  : C.A. No. 10-428S
 :
DAN'S PAYROLL SERVICE, INC., and :
DAN'S MANAGEMENT COMPANY, :
LLC and BOULEVARD DONUTS, INC. :
d/b/a DUNKIN' DONUTS :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

**Background**

Before the Court is Defendants' Motion for Summary Judgment (Document No. 20) on all claims set forth in the Complaint of Plaintiff Neil R. Barlow ("Plaintiff") pursuant to Fed. R. Civ. P. 56. Plaintiff filed his Complaint in the Rhode Island Superior Court on September 9, 2010 alleging that Defendants violated the federal Family Medical Leave Act, 29 U.S.C. 2601, <u>et seq.</u>, when they removed Plaintiff from his position as Manager of Boulevard Donuts upon his attempted return from a one-week medical leave in January 2009. Defendants subsequently removed the case to this Court on October 15, 2010.

Defendants Dan's Payroll Service, Inc., Dan's Management Company, LLC and Boulevard Donuts, Inc. d/b/a Dunkin' Donuts ("Defendants") argue they are entitled to summary judgment because (1) their decision to remove Plaintiff as the Manager of Boulevard Donuts was made before Plaintiff's sick leave;[1] (2) Plaintiff was removed as Manager because of his poor

---

[1] The parties do not dispute that Plaintiff's doctor, Doctor Vega, provided Plaintiff with a note indicating that Plaintiff "must" remain out of work for one week due to illness. (Document No. 21 ¶ 59; Document No. 36 ¶ 59).

job performance; and (3) Plaintiff was offered an equivalent position upon his return from leave. (Document No. 20-1).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72(a). After reviewing the Memoranda submitted and conducting independent research, I recommend that Defendants' Motion for Summary Judgment be DENIED.

**Facts**

The basic historical facts are relatively simple and are not disputed by the parties. Plaintiff was originally hired by Dan's Management in January 1999 as a Floating Assistant Manager. (Document No. 21 ¶ 5; Document No. 36 ¶ 5). Plaintiff was then assigned as Manager of its Route 2, Division Street Dunkin' Donuts Store in Warwick, Rhode Island. (Document No. 21 ¶ 6; Document No. 36 ¶ 6). In 2006, Plaintiff left Dan's Management to work for a competitor, Honey Dew Donuts. (Document No. 21 ¶ 13; Document No. 36 ¶ 13). On April 23, 2007, Plaintiff was re-hired by Dan's Management as an Assistant Manager of its Dunkin' Donuts store located in Richmond, Rhode Island. (Document No. 21 ¶ 14; Document No. 36 ¶ 14). In October 2007, Plaintiff was assigned to be the Manager of its Dunkin' Donuts store located in Preston, Connecticut and later as Manager of its Hopkins Hill location in Coventry, Rhode Island. (Document No. 21 ¶¶ 17, 21; Document No. 36 ¶¶ 17, 21). Finally, in August 2008, Plaintiff was assigned to be the Manager of Boulevard Donuts located on Jefferson Boulevard in Warwick, Rhode Island. (Document No. 21 ¶ 22; Document No. 36 ¶ 22).

From thereon, the facts become more complicated and contested between the parties. According to Defendants, the stores managed by Plaintiff were uncleanly, and Plaintiff's overall work performance was poor.[2] Plaintiff disputes Defendants' claims. He counters that the store was never in the condition described by Defendants and that any observations regarding the store's condition or Plaintiff's job performance were undocumented and never brought to his attention during his employment. (Document No. 36 ¶¶ 28-42).

On January 19, 2009, Plaintiff went to his doctor, Doctor Vega, and was told that he should remain out of work for one week due to pneumonia. (Document No. 21 ¶¶ 58-59; Document No. 36 ¶¶ 58-59). Plaintiff was given a note by Doctor Vega which indicated that Plaintiff had to remain out of work for a week. (Document No. 21 ¶ 59; Document No. 36 ¶ 59). Plaintiff received paid time off for the following week. On January 27, 2009, Plaintiff returned from his time off to meet with Defendants' COO Michael LaPolla, and Director of Human Resources John Zalis. At this meeting, Plaintiff was told that, due to his poor job performance as Manager of Boulevard Donuts, Plaintiff was being removed as Manager, and that he would instead be assigned as a Floating Assistant Manager. (Document No. 21 ¶¶ 64-65; Document No. 36 ¶¶ 64-65).

The major factual disagreement between the parties centers on the timing, reasoning and process behind Defendants' decision to remove Plaintiff as the Manager of the Boulevard Donuts. Defendants highlight a series of communications in which they contend Plaintiff's job

---

[2] For example, Defendants alleged that while Plaintiff was Manager of Boulevard Donuts, "the equipment was extremely dirty and missing essential pieces" and "the exterior grounds of the store frequently contained 'a lot of trash' and cigarette butts." (Document No. 21 ¶¶ 31-32).

performance was questioned. Many of these assertions are disputed by Plaintiff. In January 2009, Defendants claim that Andrew Michaud (Plaintiff's Supervisor) spoke in person with John Zalis to discuss the problems regarding Plaintiff's performance as Manager of Boulevard Donuts. (Document No. 21 ¶ 41). Following this meeting, Defendants claim that Mr. Michaud recommended to John Cocoris (Mr. Michaud's Supervisor) that Plaintiff be removed as Manager of Boulevard Donuts due to the problems Mr. Michaud had previously observed with regard to the cleanliness of the store and Plaintiff's job performance. (Document No. 21 ¶ 43). Defendants then claim that on January 12, 2009, Mr. Michaud met with Mr. Cocoris to inform him that the store was not operating at the level Mr. Michaud wanted, and that on January 13, 2009, Messrs. Michaud, Cocoris and LaPolla held a meeting to discuss Boulevard Donut's store operations and Plaintiff's job performance, which Mr. Michaud again stated was poor. (Document No. 21 ¶¶ 44-45). Around the time of this meeting, Mr. Michaud also prepared written notes (Document No. 21-12 pp. 9-13) describing the store's poor condition and Plaintiff's performance therein, as well as suggestions for improvement.[3] Defendants then claim that on January 15, 2009, Mr. Cocoris determined that Plaintiff was incapable of running Boulevard Donuts and should be removed as Manager, which he then allegedly recommended in person to Mr. LaPolla the following day; at which point they both agreed that Mr. LaPolla would call Mr. Zalis the following Monday, January 19, 2009, to instruct Mr. Zalis to have Plaintiff attend a meeting on January 20, 2009 where Plaintiff would be notified of his removal.

---

[3] Plaintiff does not dispute the existence of these notes; however, Plaintiff disputes the purpose of the notes. Specifically, Plaintiff argues that the purpose of the notes was not to indicate that his job was in jeopardy, but instead were Mr. Michaud's personal notes and were never prepared with the intention of turning them over to Defendants. (Document No. 36 ¶ 46).

(Document No. 21 ¶¶ 47-50). On January 19, 2009, Mr. Michaud sent an email to Mr. Cocoris regarding the uncleanliness of the Boulevard store and requesting that Mr. Cocoris view action plans that were set in place by Mr. Michaud.[4] (Document No. 21 ¶ 56; Document No. 36 ¶ 56). That same day, Defendants claim that Mr. LaPolla told Mr. Zalis they would meet with Plaintiff to inform him of his removal due to his "poor performance as Manager with respect to high costs, lack of cleanliness, and issues with employees." (Document No. 21 ¶ 57).

On January 19, 2009, the Monday after Defendants' claimed decision to remove Plaintiff as Manager, Plaintiff visited Doctor Vega who provided Plaintiff with a note indicating that he needed to be out of work for one week due to illness. (Document No. 21 ¶ 58-59; Document No. 36 ¶¶ 58-59). Defendants claim that, due to Plaintiff's absence, the meeting to remove Plaintiff was postponed until after Plaintiff returned to work. (Document No. 21 ¶ 61). On or about January 23, 2009, Plaintiff called Mr. Michaud and was told to meet with Mr. LaPolla and Mr. Zalis the following week on January 27, 2009. (Document No. 21 ¶ 63; Document No. 36 ¶ 63). Plaintiff attended this meeting on January 27, 2009, and he was told in person by Mr. LaPolla that, due to his poor job performance, he was being removed as Manager of Boulevard. (Document No. 21 ¶ 65; Document No. 36 ¶ 65). The parties dispute whether Plaintiff was offered a Floating Assistant Manager position at this meeting. Id. The parties also dispute whether Plaintiff accepted the Floating Assistant Manager position at the January 27, 2009 meeting. Id. Finally, the parties dispute whether or not the removal and reassignment to a

---

[4] Plaintiff does not dispute the existence of this email; however, he disputes that any decision to remove him as Manager had been made prior to the time the email was sent or prior to the time Plaintiff went on FMLA leave. (Document No. 36 ¶ 56). Defendants counter that Mr. Michaud was unaware of the decision to remove Plaintiff as Manager when he sent the email. (Document No. 21 ¶ 56).

floating position would have resulted in a salary decrease. Id. Plaintiff asserts that his pay would likely decrease, and Defendants assert that no final decision had been made on salary at that point. Id. The following day, on January 28, 2009, Plaintiff telephoned Matthew Sherman (Operations Manager for Dan's Management) to inform him that he would be leaving Dan's Management. (Document No. 21 ¶ 72; Document No. 36 ¶¶ 70-72).

**Summary Judgment Standard**

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and the nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v.

Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

Additionally, if the affirmative evidence presented by the nonmoving party raises a question of credibility as to the testimony provided by the moving party, summary judgment is inappropriate, and that credibility issue must be presented to the factfinders at trial. Firemen's Mut. Ins. Co. v. Aponaug Mfg. Co., 149 F.2d 359, 363 (5th Cir. 1945) ("The success of an attempt to impeach a witness is always a jury question, as is the credibility of the witnesses where they contradict one another or themselves.").

**Discussion**

The Family Medical Leave Act ("FMLA") provides eligible employees with twelve weeks of unpaid leave during a twelve-month period for, inter alia, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2614(a)(1). A "serious health condition" is generally defined as an illness or injury that involves inpatient care or continuing treatment by a health care provider. 29 U.S.C. § 2611(11). Additionally, "[an] employee generally has a right to return to the same position or an equivalent position with equivalent pay, benefits, and working conditions at the conclusion of the leave." 29 C.F.R. § 825.100(c); see also 29 U.S.C. § 2614(a)(1).

The FMLA provides for two types of enforcement claims: discrimination/retaliation claims and interference claims. Hodgens v. General Dynamics Corp., 144 F.3d 151, 159-60 (1st Cir. 1998) (discussing 29 U.S.C. § 2615(a)). Regarding discrimination/retaliation claims, employers may not (1) discriminate against employees for exercising FMLA rights; or (2) "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." Id. (quoting 29 C.F.R. § 825.220(c)). Regarding FMLA interference claims, "employers are prohibited from interfering with an employee's substantive FMLA rights." Kenney v. Bethany Home of Rhode Island, C.A. No. 09-cv-289ML, 2011 WL 1770537 at *2 (D.R.I. May 9, 2011). Plaintiff here is proceeding on an FMLA interference claim and thus must establish that (1) he was entitled to job-protected FMLA leave; and (2) his employer took action which denied or interfered with the exercise of his FMLA rights. See Sabourin v. Univ. of Utah, 676 F.3d 950, 958 (10th Cir. 2012); and Pearson v. The Unification Theological

Seminary, 785 F. Supp. 2d 141, 162 (S.D.N.Y. 2011). See also Gonzalez-Rodriguez v. Potter, 605 F. Supp. 2d 349, 370 (D.P.R. 2009) (To prevail on an FMLA interference claim, "an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied."); and Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1235 (11th Cir. 2010) ("To establish an [FMLA] interference claim, an employee need only demonstrate...that he was entitled to the benefit denied.").[5] A plaintiff asserting an FMLA interference claim is not subject to the "increased burden" of showing retaliatory or discriminatory animus. Gonzalez-Rodriguez, 605 F. Supp. 2d at 370.

Even if Plaintiff proves interference, Defendants can still prevail if they establish that Plaintiff would have been removed from his position as a store manager regardless of his taking FMLA leave. See Sabourin, 676 F.3d at 958; and Baldwin v. Hyundai Motor Mfg. Ala., LLC, No. 208-CV-13-MEF, 2009 WL 973084 at *15 (M.D. Ala. 2009). This is an affirmative defense on which Defendants bear the burden of proof. Jones v. Nationwide Credit, Inc., No. 1:07-CV-63-TWT, 2008 WL 1815537 at *2 (N.D. Ga. 2008); and Spakes v. Broward Cnty. Sheriff's Office, 631 F.3d 1307, 1310 (11th Cir. 2011). See also 29 C.F.R. § 825.216(a) ("An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment."). In other words, the right to reinstatement under the FMLA is not "unconditional" and does not entitle an employee to "any right, benefit, or position of employment other than [one] to which the employee would

---

[5] In Hodgens, 144 F.3d at 160, the First Circuit followed the lead of other Circuit Courts which have applied the McDonnell Douglas burden-shifting framework to FMLA discrimination/retaliation claims but not to FMLA interference claims, such as this one.

have been entitled had the employee not taken the leave." Breneisen v. Motorola, Inc., 512 F.3d 972, 977 (7th Cir. 2008) (construing 29 U.S.C. § 2614(a)(3)(B)).

Defendants argue that summary judgment is appropriate here because it is undisputable that (1) the decision to remove Plaintiff as Manager of the Boulevard store was made prior to Plaintiff's medical leave; (2) the decision was based solely on Plaintiff's job performance; and (3) Plaintiff was offered an equivalent position upon his returning to work. Plaintiff, on the other hand, argues that summary judgment is not appropriate because there are disputed issues of fact regarding Defendants' decision and decision-making process as well as the equivalence of the positions which must be decided by a jury. Plaintiff points out that, although the decision to remove him as Manager was allegedly made prior to his sick leave, Defendants did not document any of their claimed discussions regarding Plaintiff's job performance or the decision to remove him as a manager. Plaintiff additionally relies upon circumstantial evidence which he argues could lead a reasonable juror to find in his favor.

For example, Defendants claim that on January 15, 2009, Mr. Cocoris determined that Plaintiff was incapable of running Boulevard Donuts and should be removed as Manager, which he then recommended in person to Mr. LaPolla the following day, at which point they both agreed that Mr. LaPolla would call Mr. Zalis the following Monday, January 19, 2009, to instruct Mr. Zalis to have Plaintiff attend a meeting to be held the following day, January 20, 2009, where Plaintiff would be notified of his removal. (See Document No. 21 ¶¶ 47-50). Plaintiff argues that if Mr. LaPolla had actually informed Mr. Cocoris on January 16, 2009 that Plaintiff would be removed as Manager, then a reasonable juror might disbelieve that Mr. Cocoris would

not inform Plaintiff's supervisor, Mr. Michaud, of this fact during their January 19, 2009 discussions regarding Plaintiff and store operations. (See Document No. 27-9, pp. 7-8). In fact, Mr. Michaud testified that he first learned that Plaintiff would not be returning to the Boulevard store when he was told by Mr. LaPolla on the day Plaintiff was cleared to return to work, i.e., January 27, 2009. Id.

Plaintiff also points to an email that Mr. Michaud sent to Mr. Cocoris on the morning of January 19, 2009. (Document No. 21-12, p. 8). In it, Mr. Michaud indicates that he "would like to show [Mr. Cocoris] the action plans I have set into place and the review sessions I have had with [Plaintiff]." Id. Plaintiff argues that, if Mr. Cocoris told Mr. Michaud on January 15, 2009 that he was recommending Plaintiff's removal and that Mr. Cocoris "would get back to" Mr. Michaud about it, and if Mr. LaPolla agreed with the recommendation on January 16, 2009, then why did Mr. Michaud not ask Mr. Cocoris for an update on the situation in the January 19, 2009 email and why did Mr. Cocoris not tell Mr. Michaud about this important operational decision in their face-to-face conversation later in the afternoon on January 19, 2009. (See Document Nos. 27-8, p. 7 and 27-9, p. 8). Further, Mr. Michaud testified that he again recommended Plaintiff's removal to Mr. Cocoris on the afternoon of January 19, 2009 but did not learn of Plaintiff's removal until January 27, 2009, despite the fact that Defendants claim that the decision to remove Plaintiff had already been made on January 16, 2009. (Document No. 27-9, pp. 6-8). Again, Plaintiff argues that a reasonable juror might disbelieve that Mr. Cocoris would not have informed Mr. Michaud about this alleged decision to remove him as Manager when they talked about Plaintiff on January 19, 2009. Finally, there is no contemporaneous

documentation presented by Defendants to support that the removal decision was actually made on January 16, 2009, and Mr. Cocoris testified that "no one told [Plaintiff] that his job was in jeopardy prior to January 19, 2009." (Document Nos. 21-11, p. 8 and 27-3, p. 10).

Defendants contend that the evidence establishes that it is factually undisputable that the decision to remove Plaintiff as Manager was made on January 16, 2009 prior to his FMLA leave. However, looking at this complicated series of events as a whole which are, for the most part, undocumented and drawing all reasonable inferences in Plaintiff's favor, as I must in applying Rule 56, I cannot conclude that Defendants have shown that there are no genuine issues of material fact regarding Plaintiff's FMLA interference claim and that they are entitled to judgment as a matter of law. Plaintiff has identified sufficient circumstantial evidence which, when viewed in Plaintiff's favor and considering the lack of definitive contemporaneous documentation, would allow a reasonable factfinder to question the credibility of Defendants' witnesses regarding the timing of the removal decision. While Defendants may ultimately prevail at trial, it is not permissible for this Court to make such credibility determinations in this context. As earlier stated, if the affirmative evidence presented by the nonmoving party raises at least a reasonable question of credibility as to the testimony provided by the moving party, summary judgment is inappropriate, and that credibility issue must be presented to the jury. Firemen's Mut. Ins. Co., 149 F.2d at 363.

Next, Defendants argue that since Plaintiff was offered an equivalent position upon returning to work, he was not denied any substantive FMLA rights in any event. In order to prevail on this argument, Defendants must show an absence of any genuine issue of fact that

Plaintiff was offered "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(B). See also 29 C.F.R. §§ 825.100(c) and 825.215. "The test for equivalence is strict." Breneisen, 512 F.3d at 977. In addition to pay and benefits, the position must be "substantially similar" in terms of "duties, conditions, responsibilities, privileges and status as the employee's original position." 29 C.F.R. § 825.215(e). See also Smith v. East Baton Rouge Parish Sch. Bd., 453 F.3d 650, 651 (5th Cir. 2006) (equivalence analysis includes consideration of whether new and old positions are generally viewed by employees as "equally desirable" and have similar opportunities for promotion and raises).

Defendants unconvincingly argue that it is undisputable that Plaintiff was offered an equivalent position because (1) there is no evidence that Plaintiff would have been paid any less than he was already being paid; and (2) the position and job duties of a store manager are the same as those of a floating assistant manager.

Regarding the issue of compensation, Defendants contend that Plaintiff previously received a salary of $1,000.00 per week as a Floating Manager, the same amount he was paid as the Manager of the Boulevard store, and that "there is no reason to believe that [Plaintiff] would not have continued to earn $1,000 as a floating assistant manager until a store manager position in an appropriate store opened for [Plaintiff]." (Document No. 20-1, p. 19). This argument is speculative and not supported by any evidence. Furthermore, it is contradicted by a statement authored by Mr. Zalis (Director of Human Resources) regarding the January 27, 2009 meeting with Plaintiff in which he indicates that Mr. LaPolla was going to speak to the

CEO James Lynch about Plaintiff's salary "because he is at a very high rate for a floater" and that Plaintiff was told that "his pay rate may be adjusted." (Document No. 27-7, p. 2). Under the circumstances, Plaintiff reasonably asserts that it was apparent to him that his salary would likely be reduced. (Document No. 36 ¶ 73).

Regarding the issue of job duties, Defendants argue that the two positions are equivalent because a floating assistant manager "performs the same tasks and functions as the store manager" when the store manager is not present, and because "store managers will float between the stores managed by the general manager in the same fashion as assistant or floating assistant managers." (Document No. 20-1, p. 20). Again, Defendants' argument is not sufficiently supported by the record. Plaintiff convincingly counters that the job duties of the floating assistant manager position are not equivalent to the store manager position. For example, Plaintiff argues that as a substitute he would not have control over the day-to-day activities of the store. Additionally, it is reasonable to infer that a floating assistant manager would travel farther and more frequently to fill in than a store manager who is permanently assigned to a particular store and also that a floater may have less job security.

Defendants have simply not established the absence of any genuine issues of fact as to whether a store manager position is the equivalent for FMLA job restoration purposes to a floating assistant manager position. Again, viewing the record as a whole and drawing all reasonable inferences in Plaintiff's favor, I cannot find as a matter of law that the two positions in issue are legally equivalent within the meaning of the FMLA.

**Conclusion**

For the foregoing reasons, I recommend that Defendants' Motion for Summary Judgment (Document No. 20) be DENIED. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


 /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
August 20, 2012